UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMIE JENSEN,<br><br>                Plaintiff(s),<br>   v.<br><br>CAPITAL ONE FINANCIAL CORPORATION,<br><br>                Defendant(s). | CASE NO. C24-0727-KKE<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE |

Plaintiff Tamie Jensen received a text message from a contact, containing content prepared by Defendant Capital One Financial Corporation as part of its "Refer a Friend" credit-card promotion. Dkt. No. 1 ¶ 38. Jensen filed this lawsuit against Capital One, claiming that the transmission of this commercial text message violates Washington's Commercial Electronic Mail Act ("CEMA") and therefore violates Washington's Consumer Protection Act ("CPA") as well. *Id*. ¶¶ 49–74.

Capital One filed a motion to dismiss, contending that Jensen's claims fail for a number of reasons: (1) because Capital One is immune under Section 230 of the Communications Decency Act ("CDA") from liability for text messages it did not directly send; (2) because Jensen's claims seek to interfere with Capital One's power to advertise and market its credit cards, and are therefore preempted by the National Bank Act ("NBA"); and (3) because Jensen has failed to state a CEMA claim because she has failed to allege that Capital One either initiated the text message or

substantially assisted in transmitting the message. Dkt. No. 15 at 16–29.[1] The Court rejects each of these contentions and will therefore deny Capital One's motion to dismiss.

Capital One's motion also contains a request to strike Jensen's class allegations because the proposed class lacks commonality and is improperly defined in "fail-safe" terms. Dkt. No. 15 at 29–33. Although the Court is sympathetic to Capital One's concerns, the Court declines to rule at this time that, as a matter of law, this case cannot be maintained as a class action. Rather, the Court will consider this issue as necessary at the class-certification stage.

Accordingly, the Court will deny Capital One's motion to dismiss and motion to strike.

### I.    BACKGROUND[2]

Capital One is a banking company that offers, among other things, credit cards, and promotes its credit cards via a "Refer a Friend" program. Dkt. No. 1 ¶ 14. The "Refer a Friend" program asks existing credit cardholders to send a text message to their contacts that includes a referral link created by Capital One. *Id*. ¶ 15. If the friend uses the link to sign up for a credit card, the sender receives a bonus award. *Id*.

The "Refer a Friend" program can be accessed via Capital One's mobile app or its website. Dkt. No. 1 ¶¶ 16, 18. If users click the referral button on either the app or the website, Capital One then generates a referral link, composes an editable text message, and directs the user to copy and paste that message with the link to their contacts. *Id*. ¶¶ 16–21. On the app, underneath the referral button reads: "You confirm you have consent to send text messages to each recipient. You may edit the pre-filled message as desired." *Id*. ¶ 34. The website referral button is not accompanied

---

[1] This order refers to the parties' briefing using CM/ECF page numbers.

[2] The background facts are taken from the complaint (Dkt. No. 1) and assumed to be true for purposes of this motion.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE - 2

by these statements nor is there any other reference to consent on the website version of the "Refer a Friend" program. *Id*.

Jensen received a "Refer a Friend" text from one of her contacts, and responded "Stop sending me these." Dkt. No. 1 ¶ 39. The text message she received had not been edited by her contact before she received it; it contained only the pre-filled content composed by Capital One. *Id*. ¶ 40. She filed this putative class-action lawsuit on behalf of herself and others who received a "Refer a Friend" text message to their cell phone number while residing in Washington without having given advance clear and affirmative consent. *See id*. ¶ 42.

Capital One filed a motion to dismiss and/or strike the class allegations. Dkt. No. 15. After considering the parties' briefing and the oral argument of counsel, the Court denies the motion for the following reasons.

## II.    ANALYSIS

**A.    Legal Standards on a Motion to Dismiss for Failure to State a Claim**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B.    Capital One Is Not Entitled to Immunity Under Section 230 of the CDA.**

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties[.]" *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (footnotes omitted). Specifically, the CDA provides that "[n]o provider or user of an interactive computer service shall

be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any contrary state law. 47 U.S.C. §§ 230(c)(1), (e)(3). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)).

The "two basic policy reasons" for Section 230 immunity are "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).

> In passing section 230, Congress sought to … allow[] [interactive computer services] to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete. In other words, Congress sought to immunize the *removal* of user-generated content, not the *creation* of content[.]

*Roommates*, 521 F.3d at 1163. The text of Section 230 itself explains that it is the "policy of the United States" "to promote the continued development of the Internet and other interactive computer services[,]" "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services," and "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material[.]" 47 U.S.C. § 230(b)(1), (2), (4).

A claim should be dismissed under Section 230 if (1) the defendant is an "interactive computer service" provider or user, (2) the allegedly offending content was "provided by another information content provider," and (3) the plaintiff's state-law claim treats the defendant as the "publisher" or "speaker" of that content. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir.

2009). Capital One contends that Jensen's claims satisfy all three requirements. Dkt. No. 15 at 17. Jensen does not dispute that the first and third requirements are satisfied; she only disputes the second. Dkt. No. 34 at 10.

Although the second element of Section 230 immunity requires that Jensen's claims against Capital One complain of content provided by a third party, Jensen contends that she complains of content provided—either entirely or mostly—by Capital One, *not* by a third party (the consumer). Dkt. No. 34 at 10–11. Her complaint confirms this, as it repeatedly alleges that Capital One composed the offending text messages. *See, e.g.*, Dkt. No. 1 ¶¶ 24, 25, 28, 40. Jensen alleges that she received a message that was composed entirely by Capital One. *Id*. ¶¶ 39, 40. Although Capital One emphasizes that senders retain the ability to modify the content of the "Refer a Friend" texts (Dkt. No. 36 at 7), Jensen herself received a text that was not modified. *See* Dkt. No. 1 ¶¶ 22, 38. Capital One nonetheless argues that because it merely provided suggested language, and its customers retained control over whether to or what to text to their friends, Capital One should not be liable for the text messages and language that its customers chose to send, as in *Carafano*. Dkt. No. 36 at 7.

That case is distinguishable, however. In *Carafano*, the defendant was an online dating site that required consumers to complete a multiple-choice survey in order to create a profile on the site. 339 F.3d at 1121. The site created the survey, but the answers were provided by the consumer. *Id*. A consumer created a false and defamatory profile for a celebrity that also revealed the celebrity's home address and telephone number, which allowed members of the public who accessed her profile to threaten and harass her. *Id*. The celebrity sued the site for publishing the false and defamatory profile, and the Ninth Circuit held that, although the site required its users to complete the survey, because the site did not play a significant role in creating, developing, or

transforming the relevant information—the defamatory information—the dating site was immune under Section 230 for liability arising from that content. *Id*. at 1125.

Here, however, the offending content is the text itself—and, for purposes of the alleged CEMA violation, the referral link is the operative language—which was composed in its entirety by Capital One, at least with respect to the text Jensen received. Because Jensen alleges that Capital One is the sole author of the content of the text that she received, Capital One is not alleged to be merely the passive conduit of content created by others. *See Roommates*, 521 F.3d at 1162 (explaining that a defendant website can be an immune service provider if "it passively displays content that is created entirely by third parties," but is a non-immune content provider "as to content that it creates itself, or is 'responsible in whole or in part' for creating or developing").

Furthermore, the purpose of Section 230 immunity—to encourage Internet service providers to voluntarily monitor and edit user-generated speech in internet traffic—would not be served by protecting Capital One from liability in this case. Capital One has not shown that it is entitled to Section 230 immunity for text messages forwarded by its customers that it authored entirely itself, and thus the Court finds that the CDA does not provide a basis for dismissing Jensen's claims.

C.   **Jensen's Claims Are Not Preempted by the NBA.**

Federally chartered banks[3] have the power "[t]o exercise … all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24. One of these incidental powers is the power to market and advertise any product that the bank lawfully offers. *See Franklin Nat'l Bank of Franklin Square v. New York*, 347 U.S. 374, 377 (1954). Under the NBA,

---

[3] It appears that Defendant Capital One Financial Corporation is not a national bank, but it operated the "Refer a Friend" program on behalf of a national bank, Capital One, N.A. *See* Dkt. No. 15 at 22–23. Although Jensen opposes Capital One's argument that the NBA preempts CEMA, she does not contest Capital One's argument that the NBA could apply to its activities at issue here although it is not a federal bank. *See* Dkt. No. 34 at 14–18. The Court therefore assumes as much for purposes of resolving Capital One's motion.

"state laws of general application continue to apply to national banks when 'doing so does not prevent or significantly interfere with the national bank's exercise of its powers.'" *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012) (quoting *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)); *see also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) ("Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or purposes of the NBA."). There is no bright line between significant and insignificant interference; in order to determine whether a state law regulating national banks is preempted, a court "must make a practical assessment of the nature and degree of the interference caused by a state law." *Cantero v. Bank of Am., N.A.*, 602 U.S. 205, 219–20 (2024).

Here, the parties do not dispute that national banks have the incidental power to advertise their products, and that CEMA represents a restriction on Capital One's ability to advertise its credit cards. *See* Dkt. No. 15 at 23, Dkt. No. 34 at 15. The parties disagree about whether that restriction is significant, however. Capital One argues that "text messaging is a leading means of communication in today's environment, and cutting it off is a significant form of interference with Capital One's protected power to advertise." Dkt. No. 36 at 11. Capital One goes on to contend that it cannot comply with CEMA because it is "practically impossible for [it] to obtain non-customers' 'advance, clear, affirmative consent' to commercial outreach, without first performing that very sort of outreach." *Id.* (citations omitted). Thus, Capital One contends that requiring it to comply with CEMA "effectively forecloses commercial referral advertising … to non-customers via text message" and therefore it is preempted under the NBA. *Id.*

Capital One suggests (Dkt. No. 15 at 23) that any attempt by a state to prevent a national bank from advertising its products is "the paradigmatic example of significant interference." *Cantero*, 602 U.S. at 216 (referencing *Franklin*, 347 U.S. at 374). *Franklin* does not stand for the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE - 7

proposition that *any* advertising restriction is preempted, however. *Franklin* involved a state law that prohibited banks from using the words "saving" or "savings" in its advertisements or business, which significantly interfered with the banks' ability to advertise effectively its federal power to receive savings deposits. *See Franklin*, 347 U.S. at 378. Without the ability to use an adjective that was the "commonly understood description" selected by Congress to describe a bank's power, the bank's ability to exercise that federal power was significantly impaired. *Id*.

If *Franklin* represents the preemption end of the spectrum, at the non-preemption end of the spectrum the Court finds *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233 (1944). In that case, state law required banks to turn over abandoned deposits to the state. *Id.* at 238. The *Anderson* court found that this requirement did not significantly impair a national bank's power to collect and pay deposits, because banks are generally obligated to pay the deposits "to the persons entitled to demand payment according to the law of the state where it does business." *Id*. at 248–49. The Court concluded that a state law permitting the state to demand payment of abandoned accounts did not therefore "impose an undue burden on the performance of the banks' functions." *Id*. at 248.

The Court finds that CEMA is much closer to the *Anderson* end of the spectrum than the *Franklin* end. CEMA restricts the ability of all actors (not only banks) to engage in an act defined to be an unfair or deceptive practice. In this way, it prohibits Capital One "from conducting a discre[te] banking activity in a certain manner" and "[t]he manner of prohibited conduct is not aimed at or specific to the banking industry. To the contrary the law simply require[s] all actors to conform to a generally applicable code of conduct regardless of the nature of their business." *Mann v. TD Bank, N.A.*, No. 09-1062 (RBK/AMD), 2009 WL 3818128, at *5 (D. N.J. Nov. 12, 2009). CEMA's generally applicable restrictions on the manner of advertising would not restrict all forms of Capital One's advertising, as did the prohibition on the use of the word "savings" in

*Franklin*; as noted by Jensen, not even all forms of advertising via text message would be restricted. *See* Dkt. No. 34 at 16 (suggesting that Capital One would not violate CEMA if its customers were required to "affirmatively check a box to verify that they obtained the legally required consent"). Although Capital One may prefer to advertise in its chosen manner, rather than in a CEMA-compliant manner, it has not cited authority indicating that CEMA's restrictions are significant to the degree that they are preempted. *See, e.g.*, *Gutierrez*, 704 F.3d at 727–28 (finding that a state law prohibiting misleading business practices was not preempted to the extent that it required national banks to explain to customers how they calculated overdraft fees).

Accordingly, the Court finds that requiring Capital One to comply with CEMA would not significantly impair its ability to advertise its credit cards, and thus finds no preemption here.

**D.    Jensen Has Stated Claims for Violation of CEMA and the CPA.**

The parties agree that Jensen's CPA claim and CEMA claim rise and fall together (Dkt. No. 1 ¶ 73, Dkt. No. 15 at 24), and the Court will therefore address them together in this order.

CEMA imposes liability for persons conducting business in Washington who "initiate" or "assist" in transmitting a commercial text message to a telephone number assigned to a Washington resident's cell phone. WASH. REV. CODE § 19.190.060(1). CEMA defines "assist the transmission" of a text message to refer to the provision of "substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit" a commercial text message "when the person providing the assistance knows or consciously avoids knowing that the initiator of the [text message]" will or intends to violate the CPA. WASH. REV. CODE § 19.190.010(1). CEMA defines the practice of sending such a commercial text message as "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA]." WASH. REV. CODE § 19.190.060(2).

Jensen's complaint alleges that Capital One assisted in their customers' transmission of commercial text messages that violate CEMA, or that, in addition or in the alternative, Capital One initiated the text messages through its agents (its customers). Dkt. No. 1 ¶¶ 22–29. Capital One essentially concedes that it assisted its customers in transmitting a text message, but contends that the assistance it provided was not "substantial." Dkt. No. 15 at 26. The Court disagrees, for the following reasons.[4]

Jensen's complaint contains allegations that could support a finding that Capital One substantially assisted its customers in formulating, composing, and sending commercial text messages, by generating a referral link and other content of a text message that customers are asked to copy and send to their contacts. *See* Dkt. No. 1 ¶¶ 14–22, 28 (describing the process by which a Capital One consumer creates and sends a text message via the "Refer a Friend" program). Although Capital One emphasizes the part of the process that is outside its control (when to send messages, who to send messages to, whether Capital One's provided language should be edited or sent as is), those arguments go to the merits of a CEMA claim, rather than the sufficiency of Jensen's allegations. *See* Dkt. No. 15 at 24–25. Because the complaint contains allegations that could support a finding that Capital One provided substantial assistance in the sending of the text message Jensen received, her complaint is sufficient as to that theory. *See Bottoms v. Block, Inc.*, No. 23-1969 MJP, 2024 WL 1931690, at *4 (W.D. Wash. May 2, 2024) (finding defendant's assistance to be substantial where it created a process of "easy steps for users to follow in order for the referral message to be sent"); *Moore v. Robinhood Fin. LLC*, No. 2:21-cv-01571-BJR, 2022 WL 3082969, at *4 (W.D. Wash. Aug. 3, 2022) (finding substantial assistance although defendant

---

[4] Because the Court finds that Jensen's complaint states a CEMA claim under a theory of substantial assistance, the Court need not assess whether the initiation/agency theory is also plausible. *See* Fed. R. Civ. P. 8(d)(2); *Floyd Blinsky Trucking, Inc. v. Navistar, Inc.*, No. C15-5467 BHS, 2020 WL 7043299, at *2 (W.D. Wash. Dec. 1, 2020) (finding it improper to dismiss an alternate theory of liability via a motion to dismiss for failure to state a claim, where one theory has been sufficiently pleaded).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE - 10

did not retain full control over their customers' final text messages, because it "developed and ordered the entire 'chain of events' leading to the messages' formulation and transmission"); *Wright v. Lyft, Inc.*, No. 2:14-CV-00421 MJP, 2016 WL 7971290, at *4 (W.D. Wash. Apr. 15, 2016) (finding a defendant's assistance to be substantial where plaintiff alleged that defendant started off "a chain of events" that led to the transmission of a commercial text message).

Capital One acknowledges that courts in this district have rejected arguments similar to its arguments here. Dkt. No. 15 at 27. Pointing to *Frank v. Cannabis & Glass, LLC*, No. 2:19-cv-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019), Capital One attempts to distinguish those cases on the basis that Capital One maintained less control over the transmission process in the texts at issue here. Dkt. No. 15 at 27. The Court is not persuaded. In *Frank*, the defendant created software that allowed a business to compose and initiate commercial text messages to its customers, but the defendant did not itself compose the text messages or create a process by which the customers were encouraged and incentivized to send the messages, as did Capital One here. *See* 2019 WL 4855378, at *2. Rather, the assistance provided by Capital One is orders of magnitude greater than the defendant provided in *Frank*, where the court found that the defendant provided "some form of assistance" to the business in sending text messages, but that the assistance described by plaintiff was not "substantial." *Id*. at *3.

Capital One also attempts to distinguish *Bottoms* and *Moore* on the grounds that on its mobile app, it notified its customers that it should only send texts to people who have consented to receive the text messages, and thus falls outside the statutory definition of one that provides substantial assistance. Dkt. No. 15 at 27. Capital One asserts that these "affirmative steps to confirm that recipients had consented" indicate that Capital One did not know or avoid knowing that the text messages would be sent without consent. Dkt. No. 36 at 12. Capital One's description of the notice is only partially accurate: the notice on the mobile app indicates that the customer

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE - 11

should have received consent to send "text messages" to the recipient, but not that the customer should have received consent to send this particular commercial text message. *See* Dkt. No. 1 ¶¶ 34–35. Although Capital One suggested at oral argument that a "natural" reading of the notice would tell its customers to send a text message only with the consent of the recipient with respect to that particular message (Dkt. No. 39 at 17), the Court concludes the opposite. *See* Dkt. No. 1 ¶ 34 ("You confirm you have consent to send text messages to each recipient."). The plain language of the notice, by referring to text messages in the plural, suggests that the consent at issue is the consent to send text messages in general, rather than this particular text message. *Id*.

In any event, the Court finds that Capital One's incomplete notice in its mobile app (and complete lack of notice on its website) does not undercut the sufficiency of Jensen's allegations supporting her CEMA claim, namely that Capital One provided substantial assistance as defined in the statute to its customers in the transmission of commercial text messages. The Court accordingly denies Capital One's motion to dismiss this claim.

E. **The Court Denies as Premature Capital One's Motion to Strike Jensen's Class Allegations.**

In order to certify a class, a court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Jensen's complaint provides a non-exclusive list of three "questions of law and fact common to the proposed class": (1) whether Capital One's "Refer a Friend" text messages are commercial in nature, (2) whether Capital One violated CEMA/CPA, and (3) whether class-wide injunctive relief is necessary to prevent harm to Jensen and other class members. Dkt. No. 1 ¶ 46. The complaint also alleges that "individual litigation of each claim is impractical" and would be "unduly burdensome[.]" *Id*. ¶ 48.

Capital One argues that these allegations are insufficient to establish commonality and moves to strike them under Federal Rule of Civil Procedure 12(f). This rule allows a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading in order to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up). Capital One contends that Jensen's class allegations should be stricken for two related reasons: (1) the putative class lacks commonality, and (2) the class is defined using "fail-safe" terms. Dkt. No. 15 at 29–33. Because the class is defined as people who received a "Refer a Friend" message without having provided advance clear and affirmative consent, Capital One contends that the facts regarding consent for each class member will be different and thus warrant individualized investigation. *Id*. at 30. Under these circumstances, where "intensely factual questions will dominate each class member's claim[,]" Capital One argues that the putative class lacks commonality. *Id*. In the alternative, Capital One argues that because membership in the putative class "is tied to the ultimate question of liability[,]" Jensen's complaint creates an impermissible fail-safe class. *Id*. at 31–32 (quoting *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886, 2021 WL 1140227, at *3 (W.D. Wash. Mar. 24, 2021)).

The Court understands Capital One's concerns regarding the potential need for individualized investigation, the likelihood that Jensen's class definition is impermissibly fail-safe and/or circular, and the difficulty of ascertaining class members—but finds that these questions should not be resolved now. Rule 12(f) motions are generally disfavored as a delay tactic, and especially disfavored with respect to class allegations "because the shape and form of a class action evolves only through the process of discovery." *Adan v. Swedish Health Servs*., No. 2:23-cv-01266-TL, 2024 WL 2398208, at *4 (W.D. Wash. May 23, 2024) (quoting *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4729176, at *2 (W.D. Wash. Mar. 27, 2020)).

"District courts—especially in this district—regularly find that 'a motion for class certification is a more appropriate vehicle for arguments about class propriety.'" *Wilmuth v. Amazon.com Inc.*, No. 2:23-cv-01774-JNW, 2024 WL 5088337, at *4 (W.D. Wash. Dec. 12, 2024) (quoting *Hoffman* 2020 WL 4729176, at *2, and collecting cases).

Although Capital One emphasizes that there are exceptions to this general rule (Dkt. No. 36 at 13), it has not shown the Court that this case is such an exception and would not benefit from discovery. *See Patrick v. Ramsey*, No. C23-0630-JLR, 2023 WL 6680913, at *2 (W.D. Wash. Oct. 12, 2023) (denying a motion to strike class allegations because "[a]lthough the court has doubts as to whether this case may ultimately be maintained as a class action—particularly with respect to Federal Rule of Civil Procedure 23(b)(3)'s predominance and superiority requirements—it cannot at this time conclude that the class is uncertifiable as a matter of law"). The Court therefore declines to find at this time that the class is uncertifiable as a matter of law and denies Capital One's motion to strike as premature.

### III.   CONCLUSION

For these reasons, the Court DENIES Defendant's motion. Dkt. No. 15. The parties shall file an updated class-action joint status report regarding case scheduling disputes and/or agreements (*see* Dkt. No. 18 at 9–10), no later than March 14, 2025. The clerk is directed to file a class-action joint status report order on the docket for the parties to use in preparing their report. After reviewing the updated joint status report, the Court will set a scheduling conference.

Dated this 25th day of February, 2025.

Kymberly K. Evanson
United States District Judge